IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Kelly Killeen | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 874 |
| | ) | |
| McDonald's Corporation and Salabad, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion and Order

In this putative class action, plaintiff sues McDonald's Corporation and one of its franchisees claiming that they violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ISCS 505/2 ("ICFA"), and unlawfully enriched themselves, by deceptively advertising and marketing certain "Extra Value Meals" for sale in their restaurants. Defendants have moved to dismiss the complaint on various grounds, but I confine my analysis to a single, dispositive issue.

According to the complaint, defendants market and sell Extra Value Meals that bundle together several menu items that can also be purchased a la carte. For example, defendants' "Sausage Burrito Extra Value Meal" allegedly contains two sausage burritos, hash browns, and a medium coffee, which

consumers can also order individually. According to the complaint, defendants marketed Extra Value Meals as "a value," meaning that the marketing suggested that the cost of an Extra Value Meals was less than the aggregate cost of its individual components purchased separately, when that was not always the case. For example, plaintiff claims that after seeing defendants' advertising, she purchased a Sausage Burrito Extra Value Meal at a Chicago McDonald's for $5.08 when she would have paid only $4.97 had she ordered the individual items in the Extra Value Meal a la carte. Plaintiff claims that defendants' advertising and marketing was intended to dupe consumers (two classes of whom she seeks to represent) into paying more for items they could have bought at a lower cost.

Plaintiff's theory has superficial appeal: common experience favors her assertion that consumers expect to pay less for items bundled together and billed as a "value" package than they would pay if they purchased the items separately. But even assuming defendants' marketing of the Extra Value Meal had a tendency to mislead consumers in this respect, Illinois law is clear that where other information is available to dispel that tendency, there is no possibility for deception. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939-40 (7th Cir. 2001) (pharmaceutical manufacturer's statements discouraging substitution of two products containing the same active

ingredient and stating that they were "different medications" did not violate ICFA because "all of the information available" indicated that the medications contained the same active ingredient); *Fuchs v. Menard, Inc.*, No. 17-cv-1752, 2018 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (consumers' "direct and complete access to the information needed" to determine accuracy of the defendant's statements defeats ICFA claim); *Tudor v. Jewel Food Stores, Inc.*, 681 N.E. 2d 6, 8 (Ill. App. Ct. 1997) (no ICFA claim against grocery store that charged a higher price at the register than the price stated in ads and on the shelf because the receipt accurately reflected the price charged); *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E. 2d 602, 608 (Ill. App. Ct. 1996) (no ICFA claim against bank for allegedly "hiding" an overdraft fee that was disclosed in a pamphlet the plaintiff received).

Plaintiff does not claim that the prices defendants charged for their menu items were unavailable to her at the time she made her purchase. Indeed, anyone familiar with fast-food restaurants such as McDonald's surely knows that prices are typically displayed on menus located near the registers. Understandably, plaintiff may not have wished to take the time to compare prices, but there is no question that doing so would have dispelled the deception on which her claims are based. Accordingly, this is not a case in which consumers would have to

3

consult an ingredients list or other fine print to determine whether prominent images or labels a defendant uses in connection with its product accurately reflect the product's true nature or quality. *Cf. Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) (words "fruit juice" alongside images of specific fruits on packaging of a toddler food product could constitute false advertising, even though ingredients list in small print on side of box disclosed corn syrup and sugar as the most prominent ingredients, with no juice from the depicted fruits); *Korte v. Pinnacle Foods Group, LLC.*, No. (S.D. Ill. Mar. 27, 2018) (defendant's labelling of its salad dressing as "E.V.O.O. Dressing—Made With Extra Virgin Olive Oil," could mislead consumers about the product's quality, despite presence of and ingredients list that included other, inferior oils). Here, a straightforward, price-to-price comparison based on information available at the point of purchase would unequivocally dispel any misleading inference that could be drawn from the name "Extra Value Meal." *See In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, 275 F. Supp. 3d 910, 922-23 (N.D. Ill. 2017) (no ICFA claim where statements that are ambiguous in isolation are clarified in context by other available information).

Plaintiff argues that *Tudor*, *Trujillo*, and a third case defendant cites, *Batson v. Live Nation Entertainment, Inc.*, 746

4

F.3d 827 (7th Cir. 2014) (no ICFA claim based on "hidden" parking fee included in price of concert ticket), are distinguishable on their facts. But she offers no reasoned analysis for why the factual distinctions she observes warrant a different outcome here. *Kraft, Inc. v. F.T.C.*, 970 F.2d 311 (7th Cir. 1992), which did not involve ICFA claims but instead challenged an order by the Federal Trade Commission finding violations of the FTC Act, likewise does not support her cause.

For the foregoing reasons, plaintiff's complaint is dismissed.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: April 6, 2018